**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

NIMBUS THERAPEUTICS, LLC and
NIMBUS LAKSHMI, INC.,

                            Plaintiffs,

v.

CELGENE CORPORATION and BRISTOL-
MYERS SQUIBB COMPANY,

                            Defendants.

**Case No. 1:21-cv-6850 (JSR)**

**Civil Action**

**<u>PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
CELGENE'S MOTION FOR A PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

FACTUAL BACKGROUND ........................................................................................... 2

    A.   The Nimbus And Celgene Alliance And The Warrant Agreement ...................... 2

    B.   BMS' Acquisition Of Celgene Threatens Anticompetitive Effect
        On Nimbus's TYK2 Program ............................................................................ 5

    C.   BMS' Threatened Control Ripens When Celgene Serves Its Notice
        Of Interest On June 1, 2021 And Nimbus Terminates The Warrant. ................... 7

ARGUMENT ............................................................................................................... 7

I.     LEGAL STANDARD ..................................................................................... 7

II.    THE WARRANT HAS ALREADY TERMINATED AND CANNOT BE
      REVIVED ON THIS MOTION ..................................................................... 8

III.   CELGENE HAS NOT ESTABLISHED IRREPARABLE HARM TO
      JUSTIFY A PRELIMINARY INJUNCTION ............................................... 9

IV.   DEFENDANTS HAVE NOT MET THEIR BURDEN OF
      DEMONSTRATING A LIKELIHOOD OF SUCCESS ON THE MERITS
      OR SUFFICIENTLY SERIOUS QUESTIONS GOING TO THE MERITS ......... 13

    A.   Defendants Proffer No Facts Or Argument That They Performed
        Their Duties Under Sections 5 Or 6 Of The Warrant. ...................................... 14

    B.   Nimbus Is Likely To Establish A Breach Of Sections 5 And 6 Of
        The Warrant ..................................................................................................... 15

    C.   Defendants Proffer No Facts Or Argument That They Have Not
        Already Violated Sections 1 And 2 Of The Sherman Act. ............................... 18

    D.   Defendants Offer No Support For The Assertion That An
        Assignment Necessarily Would Be Procompetitive ........................................ 19

    E.   Prior To Termination, Nimbus Already Had Complied With All Of
        Its Material Duties ........................................................................................... 21

    F.   Nimbus Did Not Waive Its Right To Terminate ............................................. 22

    G.   Nimbus Provided BMS Ample Opportunity To Cure And
        Concluded That Further Attempts At Resolution Would Be Futile ................... 23

V.    THE EQUITIES AND THE PUBLIC INTEREST WEIGH AGAINST A
      PRELIMINARY INJUNCTION ................................................................... 23

CONCLUSION ........................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**                                                                                    **Page(s)**

*Alcon Vision, LLC v. Lens.com, Inc.*,
   2020 WL 5899879 (E.D.N.Y. Feb. 28, 2020).............................................................24

*Alpha Cap. Anstalt v. Shiftpixy, Inc.*,
   No. 19-cv-06199-PGG-RWL, ECF 21 (S.D.N.Y. filed July 3, 2019)....................................11

*Baker's Aid, a Div. of M. Raubvogel Co., Inc. v. Hussmann Foodservice Co.*,
   830 F.2d 13 (2d Cir. 1987)..................................................................................11

*C&A Carbone, Inc. v. Town of Clarkstown*,
   770 F. Supp. 848 (S.D.N.Y. 1991) .........................................................................13

*Cap. One, N.A. v. Auto Gallery Motors, LLC*,
   2019 WL 4805253 (E.D.N.Y. Sept. 30, 2019) .........................................................12

*Petition of Columbia Broadcasting System, Inc.*,
   235 F. Supp. 684 (S.D.N.Y. 1964) ........................................................................16

*Comput. Assocs. Int'l, Inc. v. Bryan*,
   784 F. Supp. 982 (E.D.N.Y 1992) .........................................................................13

*Convergen Energy WI, LLC v. L'Anse Warden Electric Co. LLC*,
   2020 WL 5894079 (S.D.N.Y. Oct. 5, 2020) ...........................................................12

*Corning Inc. v. PicVue Elecs., Ltd.*,
   365 F.3d 156 (2d Cir. 2004)..................................................................................1

*Cuomo v. Cahill, Larkin & Co., P.C.*,
   1989 WL 1632800 (S.D.N.Y. Jan. 10, 1989) .........................................................12

*Decorative Hardware Studio, Inc.* v. *Clawfoot Supply LLC*,
   2014 WL 2766548 (S.D.N.Y. June 18, 2014) ........................................................23

*EMA Fin., LLC v. AIM Expl., Inc.*,
   2019 WL 689237 (S.D.N.Y. Feb. 19, 2019)............................................................11

*Firemen's Ins. Co. v. Keating*,
   753 F. Supp. 1146 (S.D.N.Y. 1990).......................................................................11

*Matter of Fontana D'Oro Foods, Inc.*,
   65 N.Y.2d 886 (1985) .......................................................................................12

*Galli v. Metz*,
   973 F.2d 145 (2d Cir. 1992).................................................................................21

*Giuffre Hyundai, Ltd. v. Hyundai Motor America,*
  756 F.3d 204 (2d Cir. 2014).........................................................................................23

*Gunter v. Long Island Power Auth./Keyspan,*
  2008 WL 697613 (E.D.N.Y. Mar. 14, 2008) ...............................................................8

*Harris v. Diaz,*
  2004 WL 2912888 (S.D.N.Y. Dec. 14, 2004) .............................................................8

*JN Contemporary Art LLC v. Phillips Auctioneers LLC,*
  472 F. Supp. 3d 88 (S.D.N.Y. 2020).......................................................................9, 10

*JSG Trading Corp. v. Tray-Wrap, Inc.,*
  917 F.2d 75 (2d Cir. 1990).......................................................................................9, 10

*Life Tech. Corp. v. AB Sciex Pte. Ltd.,*
  2011 WL 1419612 (S.D.N.Y. Apr. 11, 2011)............................................................12

*In re M.B. Int'l W.W.L.,*
  2012 WL 3195761 (S.D.N.Y. Aug. 6, 2012).......................................................11, 12

*Melnitzky v. Jones,*
  2008 WL 3884361 (S.D.N.Y. Aug. 21, 2008).............................................................8

*New York v. Deutsche Telekom AG,*
  439 F. Supp. 3d 179 (S.D.N.Y. 2020)........................................................................16

*Pamlab, L.L.C. v. Macoven Pharm., L.L.C.,*
  881 F. Supp. 2d 470 (S.D.N.Y. 2012)........................................................................24

*Park Irmat Drug Corp., v. Optumrx.,*
  152 F.Supp. 3d 127 (S.D.N.Y. 2016)..........................................................................20

*Perma Life Mufflers v. International Parts Corp.,*
  392 U.S. 134 (1968), *overruled on other grounds by Copperweld Corp. v.*
  *Independence Tube Corp.,* 467 U.S. 752 (1984) ......................................................20

*Pisarri v. Town Sports Int'l.,*
  758 F. App'x 188 (2d Cir. 2019) .................................................................................7

*Register.com, Inc. v. Verio, Inc.,*
  356 F.3d 393 (2d Cir. 2004).......................................................................................10

*Rodriguez ex rel. Rodriguez v. DeBuono,*
  175 F.3d 227 (2d Cir. 1999).................................................................................9, 10

*Rosen v. Siegel,*
  106 F.3d 28 (2d Cir. 1997)...........................................................................................1

*Ross v. Koenigsmann*,
    2016 WL 5107130 (N.D.N.Y. Sept. 20, 2016) ...................................................................7, 8

*Seitzman v. Hudson River Assocs.*,
    126 A.D.2d 211 (1st Dep't 1987) .........................................................................................12

*Shapiro v. Cadman Towers, Inc.*,
    51 F.3d 328 (2d Cir. 1995)...............................................................................................9, 10

*Sierra Club v. Hennessy*,
    695 F.2d 643 (2d Cir. 1982)...................................................................................................10

*Silber v. Barbara's Bakery, Inc.*,
    950 F. Supp. 2d 432 (E.D.N.Y. 2013) ..............................................................................7, 24

*Sokoloff v. Harriman Ests. Dev. Corp.*,
    96 N.Y.2d 409 (2001) ...........................................................................................................13

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
    988 F.3d 690 (4th Cir. 2021) .................................................................................................16

*Sweeney v. Bane*,
    996 F.2d 1384 (2d Cir. 1993)............................................................................................9, 10

*Ticor Title Ins. Co. v. Cohen*,
    173 F.3d 63 (2d Cir. 1999).....................................................................................................12

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
    60 F.3d 27 (2d Cir. 1995).........................................................................................................7

*TrueEx, LLC v. MarkitSERV Limited*,
    266 F. Supp. 3d 705 (S.D.N.Y. July 18, 2017)....................................................................24

*U.S. Philips Corp. v. Iwasaki Elec. Co.*,
    607 F. Supp. 2d 470 (S.D.N.Y. 2009)...................................................................................13

*U.S. v. Chas. Pfizer & Co.*,
    205 F. Supp. 94 (S.D.N.Y. 1962) .........................................................................................16

*Wolff & Munier, Inc. v. Whiting-Turner Contracting Co*,
    946 F.2d 1003 (2d Cir. 1991).................................................................................................23

**Statutes**

15 U.S.C. 18(a)(e)(1) ...................................................................................................................4

15 U.S.C. § 15b............................................................................................................................22

15 U.S.C. § 18a..............................................................................................................................4

15 U.S.C. §18a(b)(1) ............................................................................................4

15 USC § 45(e) ..................................................................................................16

**Other Authorities**

16 CFR §803.20(c)(2)(ii) ...................................................................................4

*In the matter of Bristol-Myers Squibb Co. & Celgene Corp.*, Analysis of
    Agreement Containing Consent Orders to Aid Public Comment,
    https://www.ftc.gov/system/files/documents/cases/bms-celgene-aac.pdf ..............................6

*In the matter of Bristol-Myers Squibb Co. & Celgene Corp.*, Decision & Order,
    https://www.ftc.gov/system/files/documents/cases/decision_pages_from_bms-
    celgene_package_-3.pdf ...........................................................................................5

*In the matter of Bristol-Myers Squibb Co. & Celgene Corp.*, Dissenting Statement
    of Commissioner Rebecca Kelly Slaughter at 1-2,
    https://www.ftc.gov/system/files/documents/public_statements/1554283/17_-
    _final_rks_bms-celgene_statement.pdf; ...................................................................6

*In the matter of Bristol-Myers Squibb Co. & Celgene Corp.*, Dissenting Statement
    of Commissioner Rohit Chopra at 2-3,
    https://www.ftc.gov/system/files/documents/public_statements/1554293/disse
    nting_statement_of_commissioner_chopra_in_the_matter_of_bristol-myers-
    celgene_1910061.pdf ...............................................................................................6

*Merger Review,* FED. TRADE COMM'N, https://www.ftc.gov/news-events/media-
    resources/mergers-and-competition/merger-review (last visited Sept. 26,
    2021) .........................................................................................................................4

Plaintiffs Nimbus Therapeutics, LLC and Nimbus Lakshmi, Inc. (collectively "Plaintiffs") hereby submit this memorandum of law in opposition to Celgene Corporation's ("Celgene") Motion for a Preliminary Injunction (the "Motion").

Defendants ask this Court to preliminarily enjoin Plaintiffs from "taking any actions inconsistent with" the Warrant, and toll and extend the "deadlines" in the Warrant.  The Motion should be denied because Defendants fail to establish any of the elements required to issue a preliminary injunction.

First, Defendants' requested relief to preliminarily revive the Warrant is inappropriate at this time because the Warrant was already terminated one month before Defendants filed their Motion.[1]

Second, there is no irreparable harm to justify a preliminary injunction because Celgene admits that its interest in Nimbus Lakshmi, Inc. is merely financial.  Defendants proffer no facts or argument why they cannot be compensated at the end of this case.

Finally, Celgene fails to meet its burden to show a likelihood of success on the merits. Celgene proffers no facts or argument that Defendants have not already breached their duties under the Warrant or that they have not violated the antitrust laws.  To the contrary, Celgene implicitly concedes that the acquisition of Nimbus Lakshmi, Inc. or the TYK2 asset pursuant to the Warrant would constitute a violation of the antitrust laws.  Celgene's *entire* argument as to the likelihood of success on the merits is based on a hypothetical future assignment of the Warrant that purportedly would be procompetitive, thereby remedying Defendants' antitrust

---

[1]  Moreover, the relief requested is too vague in seeking to enjoin actions "inconsistent" with the Warrant.  *See, Rosen v. Siegel*, 106 F.3d 28, 32 (2d Cir. 1997) (ruling that the "rule against broad, vague injunctions is designed to prevent uncertainty and confusion on the part of those to whom the injunction is directed, and to be sure that the appellate court knows precisely what it is reviewing.") (internal citations omitted); *Corning Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004) (overturning injunction that was impermissibly vague).

violation.  But Defendants have pursued a filing with the Federal Trade Commission ("FTC") under the Hart-Scott-Rodino Antitrust Improvements Act ("HSR"), based on their continuing representation that they intend to acquire the Nimbus allosteric TYK2 asset.  Celgene has not assigned the Warrant nor is it under any obligation to do so, much less in a procompetitive way. Celgene is not entitled to the drastic remedy of injunctive relief based on a self-serving and speculative suggestion that it may or may not do a deal with a yet-unidentified third party willing to take on Nimbus's allosteric TYK2 asset in competition with Defendants' own allosteric TYK2 asset.

Celgene's argument that Nimbus waited too long to act rewrites the history of the parties' interactions.  Celgene falsely asserts, through a declaration of a BMS executive who recently joined BMS, that "Nimbus made no attempt to terminate the Warrant" at the time of the BMS/Celgene transaction.  In fact,  Nimbus repeatedly sought Celgene's and BMS's cooperation starting in 2019 to fix the anticompetitive nature of the relationship including *by expressly asking BMS' CEO, Dr. Giovanni Caforio, for the termination of the Warrant*.  All attempts to fix the problem were rejected by BMS, forcing Nimbus to assert in this action that Defendants are acting unlawfully and in breach of the Warrant.  There is no reason to expect that BMS will now fix the anticompetitive burden on the Nimbus TYK2 asset.

Accordingly, Defendants cannot sustain their burden in seeking the injunctive relief requested.  Nevertheless, Plaintiffs have no present interest to sell or transfer its allosteric TYK2 asset and are prepared to stipulate as such through the trial ready date.

## FACTUAL BACKGROUND

### A.    The Nimbus And Celgene Alliance And The Warrant Agreement

In 2017, Nimbus and Celgene entered into an Alliance Agreement and Warrant to Purchase Stock (the "Warrant"), executed on September 21, 2017.  Sept. 15, 2021 Declaration of

Elizabeth Mily, ECF 18 ("Mily Decl.") Ex. 1.  The agreement was structured to (a) support and enable Nimbus to develop an innovative allosteric TYK2 inhibitor and (b) provide Celgene the option to acquire the allosteric TYK2 inhibitor program from Nimbus to compete directly with BMS' allosteric TYK2 inhibitor program, given that Celgene did not have an allosteric TYK2 program of its own.  Sept. 28, 2021 Declaration of Jeb Keiper ("Keiper Decl.") ¶ 2, submitted simultaneously herewith.

There are no allosteric TYK2 inhibitors approved by the Food and Drug Administration ("FDA").  Nimbus and BMS have the two most advanced allosteric TYK2 inhibitor programs.  Keiper Decl. ¶¶ 2-3.  BMS' deucravacitinib is the most advanced development having completed its Phase 3 trials in April 2021; deucravacitinibwith is expected to be approved by the FDA in early 2022 for the treatment for moderate-to-severe psoriasis.  Answer at 48, ECF 15.  Nimbus's asset is in Phase 2 trials also for moderate-to-severe psoriasis and is currently the only expected competitive challenger to BMS.  Keiper Decl. ¶¶ 2-3.  There are no other assets with a path to FDA approval for the next five-plus years.  Keiper Decl. ¶ 18.

The parties largely agree on the terms of the Warrant itself.  The Warrant provided that once certain conditions were satisfied, Celgene could purchase 100% of Nimbus Lakshmi Inc.'s Series B Shares for $400 million upon completion of the Phase 1B clinical trials for the TYK2 asset.  Mily Decl. Ex. 1 at §§ 1.1, 2.2(a), 3.2.  Nimbus Lakshmi, Inc. owns all the rights to the Nimbus allosteric TYK2 asset.  In executing the Warrant, Celgene represented and covenanted that, as of the date of signing and exercise of the option, it was and would be in "Compliance" with the law and would not violate any law to the extent such a violation would create a material adverse effect on Celgene's ability to consummate the transaction—namely to exercise the

Warrant and acquire Nimbus's allosteric TYK2 asset.  Specifically, under Section 5.3, Celgene agreed that:

> The execution and delivery of this Warrant and the other Transaction Agreements and the consummation of the transactions contemplated hereby, will not: . . . (b) violate any Applicable Law [including federal antitrust laws] or Court Order applicable to Celgene, in each case, solely to the extent that such breach or violation would have a material adverse impact on Celgene's ability to consummate the transactions contemplated hereby.

*Id.*, § 5.3.  Similarly, in Section 6.8(a), Celgene covenanted to "use commercially reasonable efforts to comply with, and [] refrain from taking any action that would impede compliance with, all Applicable Laws [including federal antitrust laws] . . ."  *Id.*, § 6.8(a).  Section 6.8 (c) required Celgene to use similar efforts to obtain the necessary FTC clearance for the proposed transaction.

The Warrant also provides that if the FTC "issued a request to either of the Parties under 15 U.S.C. 18(a)(e)(1)," also referred to as a "Second Request," Celgene would have the right to assign the Warrant to a qualified "Third Party in the pharmaceutical industry with financial resources and capabilities greater than or substantially similar to those of Celgene."  *Id.*, § 11.2(a)(iii)(z).[2]  Under Section 8.1(c) of the Warrant, Celgene's acquisition of Nimbus Lakshmi, Inc. cannot close absent FTC clearance or the expiration of the waiting period under the HSR process.  Mily Decl. Ex. 1, § 8.1(c).

---

[2] Under the Hart-Scott-Rodino Antitrust Improvements Act, 15 U.S.C. § 18(a), parties to certain proposed transactions must submit premerger notifications to the FTC to obtain appropriate FTC clearance.  15 U.S.C. § 18a.  The submission triggers a 30-day waiting period during which time the agency may issue a Second Request, which it does when "the initial review [from the HSR filings] has raised competition issues," to conduct further investigation into the proposed transaction.  *See* 15 U.S.C. §18a(b)(1); *Merger Review*, FED. TRADE COMM'N, https://www.ftc.gov/news-events/media-resources/mergers-and-competition/merger-review (last visited Sept. 26, 2021).  Once the FTC issues a Second Request, parties cannot close the transaction until (1) they comply with the demands of the Second Request and (2) wait for another 30 days.  16 CFR §803.20(c)(2)(ii).  There is no set deadline forcing the Second Request recipient to comply within a certain timeframe, or comply at all.  *See generally*, *id.*  Failure to comply necessarily results in failure to obtain clearance.

In Section 10.1(e), the Warrant provides that it can be terminated:

> by either [Nimbus] or Celgene if the Closing shall not have been consummated by the date that is one hundred and twenty (120) days following Celgene's delivery of the Notice of Exercise (the "Termination Date"), which date shall be extended, at Celgene's option to the date that is three hundred sixty (360) days following Celgene's delivery of the Notice of Exercise if all of the conditions set forth in Article VIII (other than those conditions that by their nature are satisfied at Closing) have been satisfied by the Termination Date, except for the condition set forth in Section 8.1(c). . .

*Id.*, § 10.1(e).  As such, the Warrant also terminates automatically within 120 days from the Notice of Exercise, the written statement of Celgene's election to exercise the warrant, or on February 11, 2022, provided that Celgene has the right, *in its own discretion*, to extend such deadline until October 6, 2022 if the HSR clearance has not issued.

Separately, Nimbus may terminate the Warrant if Celgene materially breaches its representations or covenants concerning compliance with the law.  *Id.*, § 10.1(c).

**B.**     **BMS' Acquisition Of Celgene Threatens Anticompetitive Effect On Nimbus's TYK2 Program**

When BMS announced its proposed acquisition of Celgene in January 2019, Celgene executives admitted that "[t]his obviously creates certain challenges to the partnership between Celgene and Nimbus that we will have to sort through together."  Keiper Decl. ¶ 3.  In November 2019, BMS closed its acquisition of Celgene.  Mily Decl. Ex. 4 & 5.   The acquisition combined BMS' leading allosteric TYK2 program, deucravacitinib, with BMS' ability to monitor its only potential direct competitor, as well as the right to acquire that competitor.

The FTC cleared the BMS/Celgene acquisition but required the divestiture of a Celgene drug used to treat moderate-to-severe psoriasis, Otezla, also referred to by its generic name,

apremilast.[3]  The agency concluded that Celgene's apremilast will face future competition from BMS' TYK2 inhibitor, but that a divestiture of apremilast to a third party would reduce the likely anticompetitive effects of the transaction enough to cause the Agency to accept a consent decree in a 3-2 vote.[4]  However, when the FTC cleared the BMS/Celgene acquisition, Commissioners Chopra and Slaughter observed in their dissents that the FTC did not consider all potential effects of the transaction.[5]

Before and after the BMS/Celgene acquisition closed, Nimbus's President and CEO, Jeb Keiper, repeatedly expressed Nimbus's antitrust concerns to Celgene and BMS executives, and that the relationship should be terminated.  Keiper Decl. ¶¶ 5-9.  Nimbus's incentives to invest in the program were curbed by the antitrust uncertainty of BMS' option to acquire Nimbus's TYK2 asset hanging overhead.  Keiper Decl. ¶ 18.  Mr. Keiper expressly asked BMS' CEO, Dr. Giovanni Caforio to terminate the Warrant amicably, but BMS refused.  Keiper Decl. ¶¶ 6-9.  Instead, BMS indicated that it wanted to see Nimbus's Phase 1B clinical data before making its decision of whether to exercise its rights under the Warrant.  Keiper Decl. ¶ 9.  On May 4, 2021, Nimbus sent Celgene the "Warrant Trigger Data Package" containing Nimbus's results of its Phase 1B clinical trials to initiate the decision-making process on whether BMS would attempt to acquire Nimbus's asset, or let the Warrant terminate.  Mily Decl. ¶ 31.

---

[3]  *In the matter of Bristol-Myers Squibb Co. & Celgene Corp.*, Decision & Order at 18, https://www.ftc.gov/system/files/documents/cases/decision_pages_from_bms-celgene_package_-3.pdf.

[4]  *Id.*, Analysis of Agreement Containing Consent Orders to Aid Public Comment at 2-4, https://www.ftc.gov/system/files/documents/cases/bms-celgene_aac.pdf.

[5]  *Id.*, Dissenting Statement of Commissioner Rebecca Kelly Slaughter at 1-2, https://www.ftc.gov/system/files/documents/public_statements/1554283/17_-_final_rks_bms-celgene_statement.pdf; id., Dissenting Statement of Commissioner Rohit Chopra at 2-3, https://www.ftc.gov/system/files/documents/public_statements/1554293/dissenting_statement_of _commissioner_chopra_in_the_matter_of_bristol-myers-celgene_1910061.pdf.

**C.**     **BMS' Threatened Control Ripens When Celgene Serves Its Notice Of Interest On June 1, 2021 And Nimbus Terminates The Warrant.**

On June 1, 2021, Celgene served a Notice of Interest to Nimbus to (1) express Celgene's intention to exercise its right to purchase Nimbus's asset under the Warrant—thereby perfecting Celgene's and BMS' threatened control over its only competitor, and (2) request all of Nimbus preclinical and clinical information pertaining to Nimbus's TYK2 program, patent and intellectual property information, financial statements, competitive intelligence and market research, strategic clinical plans, and highly confidential, sensitive trade secrets which protect Nimbus's TYK2 program.  Mily Decl. Ex. 7.  Nimbus provided BMS/Celgene all the information and data required under the Warrant in order for BMS/Celgene to decide whether to send a Notice of Exercise.  Keiper Decl. ¶ 11.

In connection with its Notice of Interest, BMS/Celgene notified the FTC, pursuant to the HSR Act, of its intent to acquire the Nimbus asset.  *See* Counterclaims at 26, ECF 15; Mily Decl. Ex. 8.  On July 15, 2021, the FTC issued a Second Request.  Mily Decl. Ex. 8.  Thirty days later, on August 13, 2021, Nimbus notified BMS that it was terminating the Warrant pursuant to Section 10.1(c).  Mily Decl. Ex. 10.

## ARGUMENT

## I.     LEGAL STANDARD

A preliminary injunction is "an extraordinary and drastic remedy which should not be routinely granted."  *Pisarri v. Town Sports Int'l, LLC*, 758 F. App'x 188, 190 (2d Cir. 2019); *Silber v. Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432, 439 (E.D.N.Y. 2013) (similar).  "A party seeking injunctive relief ordinarily must show: (a) that it will suffer irreparable harm in the absence of an injunction and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of

hardships tipping decidedly in the movant's favor." *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 33 (2d Cir. 1995).  Courts "have required the movant to meet a higher standard where: (i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the [non-movant] prevails at a trial on the merits." *Id. at* 33–34.

## II.     THE WARRANT HAS ALREADY TERMINATED AND CANNOT BE REVIVED ON THIS MOTION

Rather than seeking to maintain the status quo, Celgene requests a ruling on the merits that revives the Warrant and tolls Celgene's obligations thereunder—changing the status quo and effectively locking up Nimbus's asset until this litigation is over and even longer, *i.e.*, until any regulatory scrutiny has been resolved, potentially into 2023.  The revival of the Warrant is not a remedy that can or should be granted on a motion for preliminary injunction.  *Harris v. Diaz*, 2004 WL 2912888, at *6 (S.D.N.Y. Dec. 14, 2004) ("An issue is mooted where the activities the plaintiff seeks to enjoin have already occurred and the court cannot undo what has already been done.") (quoting *Bank of New York Co. v. Northeast Bancorp, Inc.*, 9 F.3d 1065, 1067 (2d Cir. 1993)).  The Court cannot enjoin the termination that has already happened.  *See Melnitzky v. Jones*, 2008 WL 3884361, *8 (S.D.N.Y. Aug. 21, 2008) (denying preliminary injunction because "there is no irreparable injury that would be prevented by enjoining the sales that have already occurred."); *Gunter v. Long Island Power Auth./Keyspan*, 2008 WL 697613, at *2 (E.D.N.Y. Mar. 14, 2008) (denying preliminary injunction because the challenged conduct that "occurred in the past" was not "ongoing.").

Nevertheless, Nimbus will agree to forego any attempted sale or transfer of its allosteric TYK2 asset or Nimbus Lakshmi, Inc. to third parties at least until February 17, 2022, the Court's deadline for the parties to be trial ready.[6]

### III.   CELGENE HAS NOT ESTABLISHED IRREPARABLE HARM TO JUSTIFY A PRELIMINARY INJUNCTION

Celgene has failed to establish the requisite irreparable harm; instead, Celgene claims financial harm "if the asset were wrongfully sold to someone else" and its opportunity to assign the Warrant was somehow lost.  Celgene's Memorandum of Law ("Mem.") at 23.  At its core, Celgene complains that it cannot "monetize" the Warrant.  Mem. at 5; *see also* Counterclaims, ¶¶ 1, 32, 36, 79, ECF 15.  This is the type of financial harm that can be compensated by money damages, and therefore, the request for a preliminary injunction should be denied.  *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990) ("Irreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue."); *JN Contemporary Art LLC v. Phillips Auctioneers LLC*, 472 F. Supp. 3d 88, 93 (S.D.N.Y. 2020) (denying TRO where movant failed to establish irreparable harm because the movant sought "the same compensatory relief on this motion that it hopes to obtain at the end of this litigation—proceeds from an auction of the Stingel Painting.").

It is well-settled that "[i]rreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227,

---

[6] The tolling remedy requested is vague and insidious.  If granted, and Celgene wins on the merits, the relief would give Celgene and its parent BMS the ability to delay clarity on whether BMS will attempt to acquire Nimbus's asset until some date in 2023 (in light of the current trial date, until April 2023).  Under the Warrant, Celgene already would have had until October 6, 2022 to decide whether to assign or keep pursuing its own attempt to acquire Nimbus Lakshmi, Inc.  *See supra* at 5.  Any further delay on those timelines is not only unjustified but also affirmatively detrimental to the Nimbus TYK2 program because it allows BMS to delay the development of the Nimbus asset if BMS wins on the merits.  Keiper Decl. ¶¶ 16-20.

233–34 (2d Cir. 1999) (quoting *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir.1983) (quoting 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure, § 2948 at 431 (1st ed. 1973))).   "The movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages."  *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (quotation marks and citation omitted); *see also Sweeney v. Bane*, 996 F.2d 1384, 1387 (2d Cir. 1993) (upholding denial of preliminary injunction seeking to prevent erroneous Medicaid co-payments because harm was purely financial).  In the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied.  *See Rodriguez ex rel.*, 175 F.3d at 233–34 (vacating grant of preliminary injunction for failure to establish irreparable harm); *JSG Trading Corp.*, 917 F.2d 75 at 80; *Sierra Club v. Hennessy*, 695 F.2d 643, 647 (2d Cir. 1982)."

Celgene's entire argument focuses on its purported right to assign—*i.e.* to sell—its rights under the Warrant to a third party, and the alleged difficulty in valuing the asset if that sale were delayed pending this litigation.  *See, e.g.*, Mem. at 12-20, 23, 25.  Yet, Celgene offers no evidentiary support as to why the "unique" asset "cannot be adequately compensated by money damages alone."  Mem. at 23.

Celgene's own effort to initiate an auction process undermines its argument.  Celgene's affiant, Ms. Mily, concedes that Celgene "began a sales process to find a qualified third-party" and that it "received substantial non-binding indications of interest" from third parties (Mily Decl. ¶¶ 38-40) presumably valuing the asset to allow Celgene to assess the highest bidder.  Celgene has offered no explanation why any sales process could not continue following trial in this case.  *JN Contemporary Art LLC*, 472 F. Supp. 3d at 93 (denying TRO where movant failed to present evidence that the value of the asset—a painting—could not be established at trial in

light of the "established profession of art appraisal with developed methods of valuation.");
*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (reversing preliminary
injunction finding no irreparable harm where "damages calculations based on [movant's] lost
business opportunities, although potentially complicated, is the type of calculation commonly
required in contract disputes.").

The subject matter of this litigation is not unique in the sense required to justify
injunctive relief.  The right to sell a share in a company is a classic example of an injury that is
remediable at law, otherwise "every case involving a contract to convert stock would amount to
per se irreparable harm." *Alpha Cap. Anstalt v. Shiftpixy, Inc.*, No. 19-cv-06199-PGG-RWL,
ECF 21 at 9-10 (S.D.N.Y. filed July 3, 2019) (denying motion for preliminary injunction
rejecting argument that money damages are not adequate in cases involving a breach of a
contractual provision to provide stock).  The issue is not the unique nature of the contract's
subject matter, but the inability to value it. *EMA Fin., LLC v. AIM Expl., Inc.*, 2019 WL 689237,
at *12 (S.D.N.Y. Feb. 19, 2019) ("the traditional cases in which damages cannot adequately
compensate a plaintiff involve goods that are unique (such as real estate) or goods that
are difficult to value.").

Here, the rights to own an economic interest in the TYK2 inhibitor program can be
calculated. Celgene seeks to recover its "rights to money" and "[a]s such, the loss of those rights
may be compensated by a corresponding monetary award after the parties' claims are resolved
on the merits, and thus no injury of an irreparable nature will occur." *Firemen's Ins. Co. v.
Keating*, 753 F. Supp. 1146, 1156 (S.D.N.Y. 1990) (denying preliminary injunction).

Defendants make much of the language in the Warrant stipulating that irreparable
damage would occur in the event of a breach of the agreement.  Mem. at 23.  However, the

11

Second Circuit has consistently held that "the contractual language declaring money damages inadequate in the event of a breach does not control the question whether preliminary injunctive relief is appropriate." *Baker's Aid, a Div. of M. Raubvogel Co., Inc. v. Hussmann Foodservice Co.*, 830 F.2d 13, 16 (2d Cir. 1987). The contract language is only one factor to be considered and is not dispositive of Celgene's claim of irreparable harm. *In re M.B. Int'l W.W.L.*, 2012 WL 3195761, *12 (S.D.N.Y. Aug. 6, 2012) (declining to find irreparable harm despite the parties' agreement in the contract, holding that "[u]nder the controlling case law, the Court may consider this language [in the contract] as an admission . . . , but the Court remains obliged to make an independent determination as to whether injunctive relief is appropriate."); *Life Tech. Corp. v. AB Sciex Pte. Ltd.*, 2011 WL 1419612, *5 (S.D.N.Y. Apr. 11, 2011): ("[A] plaintiff cannot rely on the contract provision alone to demonstrate irreparable harm."). This Court, not Celgene, is the ultimate decider of its equitable jurisdiction. *Convergen Energy WI, LLC v. L'Anse Warden Electric Co. LLC*, 2020 WL 5894079, *6 (S.D.N.Y. Oct. 5, 2020) (The court held that plaintiff's argument regarding the contract language "is readily dismissed" as "[t]he parties to a contract cannot secure by agreement among themselves the equitable power of the court.").[7]

Finally, Celgene asserts that "monetary damages *may be* limited in the Warrant, *see* § 11.12, such that specific performance is particularly appropriate." Mem. at 23 (emphasis added). First, Celgene offers no explanation. Moreover, Section 11.12 relates only to the parties'

---

[7] In fact, the principal case Celgene relies on for this proposition, *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68-69 (2d Cir. 1999), actually found irreparable harm separate from the language of the parties' agreement, consistent with the approach in this Circuit. Celgene cites only one other case at the preliminary injunction stage, *Seitzman v. Hudson River Assocs.*, 126 A.D.2d 211, 214 (1st Dep't 1987), and even there the court made a finding of irreparable harm separate from the contract language. The remaining cases do not apply because they address decisions on the merits at summary judgment (*Cuomo v. Cahill, Larkin & Co., P.C.*, 1989 WL 1632800, at *1 (S.D.N.Y. Jan. 10, 1989) and *Cap. One, N.A. v. Auto Gallery Motors, LLC*, 2019 WL 4805253, at *5 (E.D.N.Y. Sept. 30, 2019)) or on appeal (*Matter of Fontana D'Oro Foods, Inc.*, 65 N.Y.2d 886, 888 (1985).

respective right to seek injunctive relief or specific performance "*in addition to* any and all other rights and remedies at law or in equity, and all such rights and remedies shall be cumulative." Mily Decl. Ex. 1, Section 11.12 (emphasis added).  Section 11.12 says nothing of limiting monetary damages.[8]  If the argument relates to the challenges of executing a deal, there is no proffer as to why those challenges present irreparable harm.  In any event, the agreement between Nimbus and Celgene was established in 2017 to provide Celgene the option to acquire an allosteric TYK2 inhibitor.  Keiper Decl. ¶ 2.  The notion of assignment of the Warrant thus exists to address a scenario in which a government authority is likely to prohibit Celgene's ability to acquire Nimbus's allosteric TYK2 inhibitor, not as a mechanism to make a return on or recover any monies "invested."

## IV.   DEFENDANTS HAVE NOT MET THEIR BURDEN OF DEMONSTRATING A LIKELIHOOD OF SUCCESS ON THE MERITS OR SUFFICIENTLY SERIOUS QUESTIONS GOING TO THE MERITS

Celgene's sole argument on its likelihood of success is that a hypothetical assignment, *if Celgene chooses to so assign*, would not violate the antitrust laws, and therefore, they have not breached their duties under the Warrant.  The argument is flawed for two reasons.  First, the lawfulness of a hypothetical, future assignment is not the issue in Nimbus's claims; rather, the questions before the court are, in Counts I and II, whether Defendants already have breached their duties under the Warrant in the course of pursuing the TYK2 asset for themselves, and in

---

[8] Each of Defendants' cases does not apply here:  *Sokoloff v. Harriman Ests. Dev. Corp.*, 96 N.Y.2d 409, 415 (2001) addresses only whether, on a motion to dismiss, a plaintiff had sufficiently alleged facts to pursue specific performance as a remedy. *U.S. Philips Corp. v. Iwasaki Elec. Co.*, 607 F. Supp. 2d 470, 483-84 (S.D.N.Y. 2009) entered a permanent injunction following a full trial record which could not be further from the case here.  *Comput. Assocs. Int'l, Inc. v. Bryan*, 784 F. Supp. 982, 986 (E.D.N.Y 1992) and *C&A Carbone, Inc. v. Town of Clarkstown*, 770 F. Supp. 848, 854 (S.D.N.Y. 1991) involved unique categories of harm – misappropriation of trade secrets and infringement of constitutional rights – that the courts have held cannot be remedied with monetary damages.

Counts III and IV, whether the Defendants already have attempted to monopolize or otherwise unlawfully restrained competition in violation of Sections 1 and 2 of the Sherman Act.

Second, even if the lawfulness of a future assignment were relevant, Celgene asks the Court to pass judgment on a hypothetical assignment in a vacuum.

### A. Defendants Proffer No Facts Or Argument That They Performed Their Duties Under Sections 5 Or 6 Of The Warrant.

Nimbus is likely to succeed on its Counts I and II because Celgene proffers no facts or arguments as to how they have performed their duties under the Warrant.  It is undisputed that Section 6.8(a) required that Celgene and Nimbus:

> shall *coordinate and cooperate with one another and shall each use commercially reasonable efforts to comply with*, and shall each refrain from taking any action that would impede compliance with, all Applicable Laws…[and] shall make all filings…or submission of other documents required by any Governmental Authority[.]

Mily Decl. Ex 1, § 6.8(a) (emphasis added).  Section 6.8(d) required that Celgene and Nimbus:

> shall use commercially reasonable efforts to take, or cause to be taken, all reasonable actions, and to do, or cause to be done, and to assist and cooperate with the other Party in doing, all things reasonably necessary, proper or advisable to consummate the transactions contemplated hereby, including using commercially reasonable efforts to accomplish the following: (i) the obtaining of all necessary, appropriate or desirable actions or non-actions, waivers, consents, approvals, orders and authorizations from Governmental Authorities.

*Id*. at § 6.8(c).  Defendants do not proffer if and how they "coordinated and cooperated" with Nimbus or whether they unilaterally used reasonable efforts to be compliant with the law; nor do Defendants proffer the extent to which, if at all, they used reasonable efforts to submit other documents or information to the relevant enforcement agencies to obtain the necessary clearances.  The only effort to comply with the law is the undisputed HSR filing by the Defendants where they have sought clearance from the FTC **to purchase Nimbus Lakshmi,**

**Inc.** and the encompassing allosteric TYK2 asset, a representation to the FTC which they now apparently denounce.  Defendants proffer no evidence or argument that the transaction submitted to the FTC would be lawful.

Equally important, Defendants proffer no facts or arguments regarding their efforts to address any FTC concerns regarding the transaction for which they filed an HSR application.  Instead, Defendants' position appears to be that, they should have the option to assign the Warrant (without Nimbus's consent) upon the issuance of the Second Request, but not be held to their duties under Sections 5 or 6 of the Warrant merely because the exercise of the Warrant.  Mem. at 12-13.

Nothing in Sections 5 or 6, or anywhere else in the Warrant, suggests that Defendants can be *excused* from their duties under Sections 5 and 6 merely because they have a right to assign without Nimbus's consent if and when they run into antitrust scrutiny as articulated in Section 11.2.  This is particularly true where Defendants have represented to the FTC that they intend to acquire the asset themselves.  Therefore, Defendants' motion should be denied for failure to proffer any facts or argument that they have performed their duties under the Warrant.

**B.**      **Nimbus Is Likely To Establish A Breach Of Sections 5 And 6 Of The Warrant**

In stark contrast to the lack of any proffer of performance by the Defendants, the limited record in this motion demonstrates that Nimbus is likely to establish that BMS and Celgene breached their duties under Sections 5 and 6 of the Warrant.  The record so far establishes that the BMS/Celgene transaction created an insurmountable antitrust issue for the exercise of the Warrant as early as late 2019 *and* that Nimbus's efforts to fix the antitrust issues presented by BMS' acquisition of Celgene were expressly and repeatedly rejected by BMS.

First, the BMS/Celgene transaction created an obvious antitrust issue for the exercise of

the Warrant by BMS/Celgene.  Celgene admitted that the transaction would "obviously" change

the relationship.  Keiper Decl. Ex. 1.  The Celgene executive responsible for the Nimbus

relationship at the time of the announcement of the proposed acquisition of Celgene by BMS,

Mr. Dennis Zaller, Executive Director of Integrative Sciences, wrote to the Nimbus team on

January 28, 2019:

> I have not yet had the chance to directly connect with Nimbus
> since the announcement of the planned acquisition of Celgene by
> BMS. ***This obviously creates certain challenges to the
> partnership between Celgene and Nimbus that we will have to
> sort through together***.

Keiper Decl. Ex. 1 (emphasis added).

It is undisputed that BMS has had the leading allosteric TYK2 asset.  Keiper Decl. ¶ 2.  It

is undisputed that Nimbus also has had an allosteric TYK2 asset, which is now in Phase 2 trials.

*Id*. ¶ 18.  It is undisputed that the BMS/Celgene transaction created the allosteric TYK2 overlap

between the parties to the Warrant.[9]  It is undisputed that the FTC has issued a Second Request

in response to BMS/Celgene's expressed intent to acquire Nimbus Lakshmi, Inc.

---

[9] The fact that the FTC cleared the BMS/Celgene transaction does not as a matter of law mean
that that transaction, with or without the parties' settlement with the FTC (referred to as a
"consent decree"), is compliant with the antitrust laws.  15 USC § 45(e) ("No order of the
Commission or judgement of the court to enforce the same shall in anywise relieve or absolve
any person, partnership, or corporation from any liability under the Antitrust Acts"); *Steves &
Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 717 (4th Cir. 2021) (following FTC clearance,
private plaintiff successfully challenged transaction on antitrust grounds and obtained a
divestiture); *Petition of Columbia Broadcasting System, Inc.*, 235 F. Supp. 684, 688 (S.D.N.Y.
1964) ("Proceedings under § 5 [of the Federal Trade Commission Act] do not in anywise relieve
or absolve any person from any liability under the Antitrust Acts."); *U.S. v. Chas. Pfizer & Co.*,
205 F. Supp. 94, 96 (S.D.N.Y. 1962) ("The fact that defendants may have been exonerated of
violation of the Federal Trade Commission Act and the possibility that the determination may be
affirmed by the full Commission's order, does not and would not estop the Government from
proceeding against the defendants under the Sherman Act."); *New York v. Deutsche Telekom AG*,
439 F. Supp. 3d 179, 224 (S.D.N.Y. 2020) ("Those agencies' [DOJ and FCC] conditional

Second, despite Mr. Zaller's initial gesture that two companies can address these challenges and "sort through together," BMS turned down Nimbus's repeated efforts to resolve the anticompetitive nature of the relationship between the parties.  Starting as early as late 2019, Nimbus's CEO, Jeb Keiper, tried to convince Celgene that the competitive overlap created by the BMS/Celgene transaction was anticompetitive and that BMS and Nimbus should cooperate to fix the issue.  Keiper Decl. ¶¶ 4-5.  On November 15, 2019, days before the BMS/Celgene acquisition closed, Mr. Keiper wrote to Rupert Vessey at Celgene:

> Nimbus understands and appreciates the 'need' for a TYK2 has changed radically for you since we first did the deal in 2017, and we would much prefer to have the rights back to the program and progress ourselves, avoiding the tension of engaging regularly with a ***fierce competitor*** that has a massive head start.

Keiper Decl. Ex. 2 (emphasis added).  The request was rejected, but Mr. Keiper followed up with multiple conversation with BMS' CEO, Dr. Giovanni Caforio, in which his attempts to fix the antitrust issues were rejected.  Keiper Decl. ¶¶ 6, 8-9.  On February 23, 2021, memorializing his video call with Dr. Caforio the same day, Mr. Keiper reported to the Board of Directors of Nimbus that:

> Earlier today I had a video call with Giovanni Caforio, BMS' CEO, to discuss the warrant relationship with TYK2. I reminded him of the conversation the two of us had a year ago, where he called the relationship an insurance policy for their deucravacitinib's Phase 3 program. Now that it is public that their Phase 3 program is successful and they are filing an NDA, I explicitly asked him to agree to terminate the relationship amicably now.

Keiper Decl. Ex. 3.  That request was rejected again.  Keiper Decl. ¶¶ 8-9.  Instead, BMS waited until the Warrant was ripe to be triggered and attempted to acquire Nimbus Lakshmi, Inc.

---

approval of the Proposed Merger does not immunize it from Plaintiff States' antitrust challenge or this Court's judicial scrutiny.").

There are many issues to cover in the course of discovery about the conduct of BMS/Celgene during the HSR review but the undisputed facts preceding the HSR filing, namely the acquisition of Celgene by BMS *and* BMS' refusal to address the competitive issues flowing from that acquisition, create a high likelihood that Nimbus will prevail on the merits of its breach of contract claims.

### C.   Defendants Proffer No Facts Or Argument That They Have Not Already Violated Sections 1 And 2 Of The Sherman Act.

Counts III and IV allege a straightforward case under the Sherman Act:  Nimbus is developing an allosteric TYK2 asset to compete with BMS' allosteric TYK2 asset.  BMS first slowed down the development of the Nimbus allosteric TYK2 asset by (1) acquiring Celgene, and thus creating an anticompetitive relationship between Nimbus and BMS, and then (2) by refusing to take the necessary measures to alleviate or eliminate the anticompetitive relationship. Further, BMS attempted to monopolize the relevant market by attempting to acquire Nimbus Lakshmi, Inc.  These acts, individually and collectively, violate Section 1 and Section 2 of the Sherman Act.[10]

Defendants repeatedly note that the FTC cleared the BMS/Celgene acquisition in late 2019.  But the FTC decision to clear the transaction does not provide them the get-out-of-jail-free card that they imply.  As a legal matter, prior agency decisions to clear a transaction does not preclude judicial review in a challenge by a private party.  *See supra*, n 9.  Indeed, the fact that the FTC issued a Second Request when BMS made its HSR filing to acquire Nimbus Lakshmi, Inc. disprove Defendants' suggestion that any legitimate antitrust concerns with the Warrant exercise were resolved by the FTC's prior clearance of BMS' acquisition of Celgene.

_____

[10] Plaintiffs also challenge the underlying acquisition of Celgene by BMS is a violation of Section 7 of the Clayton Act.

In any event, Defendants' conduct subsequent to the BMS/Celgene acquisition (made possible by that transaction) is anticompetitive.  Defendants proffer no facts that the relationship between BMS and Nimbus has been competitively benign.  It is noteworthy that Defendants' papers do not even mention the multiple conversations between the CEOs of BMS and Nimbus during which the anticompetitive nature of the relationship was discussed.  *See* Keiper Decl. ¶¶ 5-9.  Nimbus has shown that, by exercising the Warrant, BMS would be acquiring the closest competitor product.  Keiper Decl. ¶¶ 2-4.  On its face, there is a high likelihood that Plaintiffs will prevail in showing that the transaction violates the antitrust law.

### D.   Defendants Offer No Support For The Assertion That An Assignment Necessarily Would Be Procompetitive

Defendants seek to dodge Nimbus's antitrust claims by asserting that Defendants will assign the Warrant to a third party pharmaceutical company.  Indeed, Defendants' hypothetical assignment is the *only* defense to the antitrust claims raised by Plaintiffs.  First, Defendants' future endeavors do not address any past conduct.  And the Court should doubt the *bona fides* of Defendants' self-serving representation that they will assign the Warrant to a third party given Defendants' representations to the federal government in their HSR filing that they intend to acquire Nimbus's allosteric TYK2 asset.  Defendants have not taken any action that would bind them to assign, rather than acquire, Nimbus's assets.  Nothing would prevent Defendants from shifting course in the future and, following exercise of the Warrant, and attempting to retain Nimbus's allosteric TYK2 asset themselves.

But even if Defendants were to assign the Warrant to a yet-unidentified third party, the likelihood of substantial harm to competition remains.  To begin with, prior to any assignment being completed, Defendants could delay the development of Nimbus's allosteric TYK2 asset.  Based on the tolling relief sought, Defendants would have until, most likely, April of 2023 to

make a final decision as to whether to assign the Warrant or not, during which time, of course, Nimbus would have no reason or justification left to invest in, and continue development of, the asset.  Keiper Decl. ¶¶ 16-21 .

Second, there is no reason to assume that an assignment to a hypothetical third party would be procompetitive.  Defendants would control the process of the assignment, about which they provide scant details.  Defendants fail to explain which companies they contacted, how that list was compiled, which factors Defendants will evaluate in considering possible buyers, the extent of experience and resources potential buyers already have in the psoriasis space, or how Defendants will weigh those factors to make the final choice.  Defendants' approach would be inescapably plagued by the obvious conflict of interest Defendants face between acting for their own benefit (and selecting a weaker competitor) and acting for the benefit of the public (and selecting a stronger one).  Thus, allowing BMS to acquire and exercise the right even to choose the assignee for the Warrant poses an unacceptable risk of harm to competition.

Defendants also seem to suggest that Nimbus's claims should fail because Nimbus itself is a party to the unlawful Warrant.  Mem. at 14 & n.18.  This argument is frivolous.  Sherman Act jurisprudence is replete with cases where a party to an unlawful contract properly sues the other party on grounds that the contract is a violation of the antitrust laws (*e.g.*, exclusive dealing, and tying claims, as well as many monopolization claims) because it has been black letter law for more than half a century that an *in pari delicto* defense does not apply in an antitrust case except in the rare cases where the victim instigated the violation.  *Perma Life Mufflers v. International Parts Corp.*, 392 U.S. 134 (1968), *overruled on other grounds by Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984).  Defendants cite this Court's decision in *Park Irmat Drug Corp., v. Optumrx.*, 152 F.Supp. 3d 127, 141 (S.D.N.Y.

2016) where this Court stated that, "the Court is skeptical that [plaintiff] will be able to prevail on such a claim given" that it is seeking a remedy to remain in the very contract it alleges to be a violation of New York's Donnelly Act.  That case provides Defendants no support.  As stated above, Nimbus is in the complete opposite situation from the plaintiff in *Park Irmat*:  Nimbus has been trying to get *out* of the Warrant since late 2019, when the BMS/Celgene merger transformed the Warrant from procompetitive to anticompetitive.

### E.   Prior To Termination, Nimbus Already Had Complied With All Of Its Material Duties

There is no dispute that Nimbus provided all the information and due diligence Celgene was entitled to under the Warrant in order to make a decision regarding its right to issue a Notice of Interest and its right to issue a Notice of Exercise.  Mily Decl. ¶ 31; Keiper Decl. ¶ 11. Nevertheless, Defendants make the meritless argument that Section 6.8 imposes on Nimbus Lakshmi, Inc. a duty to undertake all reasonable actions to assist and cooperate with Celgene to consummate its hypothetical assignment even though the assignment clause expressly envisions the scenario where Celgene does not need Nimbus's consent.  Mem. at 13.  Assuming, *arguendo*, that such a duty existed, Defendants proffer no facts or arguments as to how Nimbus breached its duty.  Moreover, Nimbus's CEO, Jeb Keiper, repeatedly tried to explore ways to avoid the antitrust issue between the two companies created by the BMS/Celgene transaction.  Keiper Decl. ¶¶ 3-9.  His efforts were rebuffed.  *Id*.  If BMS/Celgene sincerely wanted cooperation in a transaction that would have avoided an antitrust quagmire, it could have sought such cooperation from Nimbus at any point since the BMS acquisition of Celgene.[11]

---

[11]  In any event, Section 6.8 cannot be read to impose a continuing duty on Nimbus to assist Celgene in its unilateral right to assign under Section 11.2, particularly where Celgene/BMS itself has breached Section 6.8.  Any contrary reading of these clauses would deprive Nimbus of its right to terminate in the event of a breach by Celgene.  Under such an interpretation, Celgene would be allowed to file a sham HSR filing to acquire Nimbus Lakshmi, Inc. make no effort to

### F.      Nimbus Did Not Waive Its Right To Terminate

Defendants' argument that Nimbus waived its challenge is belied by the facts.  Since the BMS/Celgene transaction, Nimbus has repeatedly asked BMS/Celgene to refrain from pursuing the next steps in the Warrant and to fix the anticompetitive relationship between the parties. Keiper Decl. ¶¶ 3-9.

Nimbus never waived its breach claim because the claim is premised not only on the BMS/Celgene transaction but also the subsequent refusal by BMS to alleviate the anticompetitive nature of the relationship.  In fact, based on his February 2021 conversation with Dr. Caforio, Mr. Keiper concluded that BMS had yet another opportunity to make things right:

> The conversation tells me that our strategy remains – prepare for a fight should they move to exercise the warrant. In my mind there is a slight chance that upon review of the data they will simply pass, but my instincts tell me it is most likely they will want to exercise to snap up a competitor, in which case our dialog turns to the antitrust regulators.

Keiper Decl. Ex. 4.  Nimbus brought its lawsuit after the Notice of Interest but before BMS made the final move and sent a Notice of Exercise, which would have locked Nimbus into a 360 day waiting period with no certainty about the future of its TYK2 asset.

In any event, Nimbus is seeking not only a declaratory judgment that the Warrant is terminated properly, but also it is challenging the enforceability of the Warrant under various claims under the Sherman Act and the Clayton Act.  The statute of limitations for a private cause

---

perform its duties under Section 6.8—thus cause the issuance of a Second Request—but then demand that Nimbus provide assistance for a transaction where it has no consent right.  *See Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.  [A]n interpretation that gives a reasonable and effective meaning to all terms of a contract is generally preferred. . . ." (internal citations omitted)).

of action under those statutes is four years from the last act in furtherance of such violation.

15 U.S.C. § 15b.  Nimbus's claims are timely because the earliest date its injury accrued was

2019.

> **G.      Nimbus Provided BMS Ample Opportunity To Cure And Concluded That Further Attempts At Resolution Would Be Futile**

Defendants' argument that Nimbus failed to comply with the notice and cure provisions

of the Warrant has no merit because doing so would have been futile.[12]  For two years, Nimbus

tried repeatedly to have BMS take some action to cure the anticompetitive relationship.  Keiper

Decl. ¶¶ 3-9.  Each attempt was rejected.  Any further attempt would have been futile and BMS

does not proffer any explanation or facts supporting why or how it would have addressed the

issue in 30 days if Nimbus had given the formal notice.  Here, the anticompetitive harm could

not be remedied because it arises from BMS' right under the acquired Warrant to choose, for the

360-day window following its imminent Notice of Exercise due on October 11, 2021, whether it

will (i) acquire the asset for itself as demonstrated by its HSR filing, (ii) assign its right and to

whom, or (ii) merely run out the Warrant's 360-day clock and then retain that right.

> **V.      THE EQUITIES AND THE PUBLIC INTEREST WEIGH AGAINST A PRELIMINARY INJUNCTION**

The equities weigh in favor of denying the relief sought.  Nimbus will defer any

attempted sale or transfer of its TYK2 Asset or Nimbus Lakshmi, Inc. to third parties until at

---

[12] *Giuffre Hyundai, Ltd. v. Hyundai Motor America*, 756 F.3d 204, 210 (2d Cir. 2014) ("New York law permits a party to terminate a contract immediately, without affording the breaching party notice and opportunity to cure . . . when the [breaching party's] misfeasance is incurable and when the cure is unfeasible. . . . When contracting parties agree to a notice-and-cure provision, it is reasonable to assume that they do so with the assumption that the breaches which would be used to terminate the contract would be *curable* breaches.")*; Wolff & Munier, Inc. v. Whiting-Turner Contracting Co*, 946 F.2d 1003, 1009 (2d Cir. 1991) (same); *Decorative Hardware Studio, Inc.* v. *Clawfoot Supply LLC*, 2014 WL 2766548, *4 (S.D.N.Y. June 18, 2014) (same).

least the Court's February 17, 2022 deadline to be trial ready.  As a result, Celgene cannot now claim that it "may lose the entire upside of the investment it made."  Mem. at 24.  On the other hand, if an injunction issues and the Warrant deadlines are tolled, Nimbus's asset will suffer irreparable harm under the cloud of regulatory uncertainty that BMS may very well extend into 2023, at its discretion.  Keiper Decl. ¶¶ 16-21.  With the fate of the asset unknown, Nimbus's ability to attract talent and capital for and justify investment in its allosteric TYK2 asset has been hampered.  *Id*.

Moreover, it is undisputed that, prior to terminating the Warrant, Nimbus provided every due diligence data package required under the Warrant to allow Celgene to make an informed decision whether to issue its notice of exercise.  Mily Decl. ¶¶ 31, 34; Keiper Decl. ¶ 11. Celgene has not offered any justification for tolling the deadlines under the Warrant.  Any delay further enables BMS to exert its influence over its only competitor for an even longer period, depressing the value of the asset and harming patients by delaying its only viable competitor from advancing in the approval process.  *Silber*, 950 F. Supp. 2d at 442 (denying relief when the plaintiff sought "preliminary relief as a commercial strategy to impede a successful competitor").

Finally, public interest is not served by enforcing contracts if doing so results in the violation of federal antitrust laws.  "The Sherman Act . . . embodies Congress' judgment that freedom of contract in some circumstances must bow to the public's interest in promoting competition and efficiency. Where the contractual right is alleged to violate the antitrust laws, the public interest in antitrust enforcement and preservation of competition outweighs the interest in freedom of contract."  *TrueEx, LLC v. MarkitSERV Limited*, 266 F. Supp. 3d 705, 726 n.143 (S.D.N.Y. July 18, 2017).  Instead, the public interest is best served by increasing competition in the market.  *Pamlab, L.L.C. v. Macoven Pharm., L.L.C.*, 881 F. Supp. 2d 470, 480-81 (S.D.N.Y.

2012) (denying motion for preliminary injunction noting "there is a countervailing interest in open competition"); *Alcon Vision, LLC v. Lens.com, Inc.*, 2020 WL 5899879, at *22 (E.D.N.Y. Feb. 28, 2020) (recommending denial of preliminary injunction where an injunction "would impede competition in the marketplace and negatively affect prices for consumers."). The uncertainty around the Nimbus allosteric TYK2 asset has already curbed its development. Keiper Decl. ¶¶ 18-19. Defendants should not be permitted to extend that cloud of uncertainty to their benefit and the public's harm.

## CONCLUSION

For these reasons, Defendants' motion for preliminary injunction should be denied.

Dated:  September 28, 2021                    Respectfully submitted,

By:  *Arman Oruc*
    Arman Oruc
    *AOruc@goodwinlaw.com*
    Goodwin Procter LLP
    601 S. Figueroa Street
    Suite 4100
    Los Angeles, CA 90017-5704
    Phone: (213) 426-2500
    Fax: (213) 623-1673

    Jeffrey A. Simes
    *Jsimes@goodwinlaw.com*
    Marshall H. Fishman
    *MFishman@goodwinlaw.com*
    Goodwin Procter LLP
    620 Eighth Avenue
    New York, NY 10018-1405
    Phone: (212) 813-8800
    Fax: (212) 355-3333

Andrew M. Lacy
*Alacy@goodwinlaw.com*
Goodwin Procter LLP
1900 N St. NW
Washington, DC 20036-1612
Phone: (202) 346-4182
Fax: (202) 204-7254

Alicia Rubio-Spring (admitted *Pro Hac Vice*)
*Arubio-Spring@goodwinlaw.com*
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
Phone: (617) 570-1000
Fax: (617) 523-1231

*Attorneys for Plaintiffs Nimbus Therapeutics, LLC and Nimbus Lakshmi, Inc.*